

Ashlyn M. Capote | Partner
Direct 716.710.5899 | acapote@goldbergsegalla.com

February 5, 2026

**VIA E-FILING**

Judge Philip H. Halpern
United States District Court
Southern District of New York
300 Quarropas Street, Room 530
White Plains, New York 10601

Re:    ***IYH Estates, LLC d/b/a Mint Leaf Kosher vs. Ohio Security Insurance***
       ***Company d/b/a Liberty Mutual Insurance***
       Case No.:        **7:25-cv-08824-PMH-VR**
       GS File No.:     **9756.0110**

Dear Judge Halp

My office

Liberty Mutual I

request a pre-mo

FRCP 12(b)(6) s

fair dealing and/

Our offi

thinks that Plain

---

Application for a pre-motion conference granted. A telephone conference has been scheduled for February 19, 2026 at 2:30 p.m. At the time of the conference, all parties shall call the following number: 855-244-8681; access code 2317 236 5283.

The Clerk of Court is respectfully requested to terminate the letter-motion pending at Doc. 20.

SO ORDERED.

Philip M. Halpern
United States District Judge

Dated:  White Plains, New York
        February 13, 2026

---

ity Insurance Company D/B/A

Honor's Individual Rules to

anticipated motion pursuant to

the covenant of good faith and

ounsel regarding why Liberty

ovenant of good faith and fair

dealing and/or extra-contractual damages. Liberty made a request to move to dismiss these claims

in the original complaint by letter dated October 31, 2025. Doc. 4. Plaintiff responded on

November 17, 2025. Doc. 7. Your Honor held a pre-motion conference on December 1, 2025.

Plaintiff then filed an Amended Complaint on December 8, 2025. Doc. 10. Consistent with the

discussion during the December 1, 2025 conference and Your Honor's Rules, I sent a letter to

IYH's counsel on December 10, 2025, explaining why the Amended Complaint did not state a

OFFICE LOCATION 665 Main Street, Buffalo, NY 14203-1425 | PHONE 716-566-5400 | FAX 716-566-5401 | www.goldbergsegalla.com
CALIFORNIA | CONNECTICUT | FLORIDA | ILLINOIS | NEW JERSEY | NEW YORK | NORTH CAROLINA | MARYLAND | MISSOURI | PENNSYLVANIA
30623009.v1

February 5, 2026
Page 2

claim for breach of the duty of good faith and fair dealing. IYH responded by letter dated December 17, 2025, and I sent a reply on December 18, 2025. On December 19, 2025, Plaintiff's counsel requested a phone call to discuss the issues, and the Court agreed to extend Liberty's answer deadline until January 12, 2026.  Docs. 12-14.

I had a lengthy conversation with Plaitniffs' counsel regarding this matter on January 5, 2026, and on that date he forwarded the draft Second Amended Complaint. Doc. 15. During the call he explained that he thought his client had a viable claim for consequential damages because Liberty should have issued an estimate for the damages sooner and should have issued higher payments sooner after the loss and ultimately issued more money overall. *Id*. I responded that those were all facts to support a breach of contract claim, and he disagreed.

Plaintiff's counsel memorialized his position vis a vis our discussion by letter dated January 6, 2026, and I responded by letter dated January 7, 2026. Ultimately, I explained to him I thought the issue was ripe for Your Honor's attention given that we had hit an impasse – IYH believes it has stated a claim for consequential damages, and Liberty disagrees. Thus, we are now making this request to be able to move to dismiss the claim for breach of the covenant of good faith and fair dealing and/or extra-contractual damages.

Again, this is a standard breach of contract dispute between Plaintiff and its property insurer, Liberty. Doc. 19. The Second Amended Complaint alleges that the plaintiff's grocery store was damaged in a fire. Doc. 19 ¶ 1. It alleges that the fire resulted in building damage, fire remediation costs, loss of inventory, and loss of business personal property. *Id*. ¶¶ 2-4. The Second Amended Complaint only has a single cause of action for breach of contract. However, the Second Amended Complaint still seeks consequential damages. The Second Amended Complaint alleges:

February 5, 2026
Page 3

- In addition to its underpayment of amounts due under the claim, Defendant's delays in timely adjusting, administering, investigating, and making payments under the claim caused Mint Leaf to suffer damages in the form of reduced sales and its eventual cessation of store operations approximately sixteen months after the fire.

- Defendant used the process of requesting information and documents, and requiring Plaintiff's EUO, to delay the handling of Plaintiff's claim and making payments thereunder.

- These delays by Ohio Security were in bad faith, and inconsistent with the implied covenant of good faith and fair dealing that was implicit in the insurance policy sold to Mint Leaf.

- Defendant understood and knew at the time it issued the policy to Plaintiff that the damages complained of herein were foreseeable and probable.

Doc. 19 ¶¶ 61-64.

These allegations still do not support a claim for bad faith or consequential damages. Respectfully, Plaintiff could amend its complaint 100 times, but the facts simply do not support any such claim because the dispute is one of breach of contract.

In a letter dated December 17, 2025, Plaintiff asserted that its position is that (1) it sustained damages as a result of Liberty's breach of contract; and (2) Liberty's delays in claim handling caused Plaintiff to sustain additional damages above the policy limit, which warrant consequential damages. First, Liberty disputes that asserting that unspecified "delays" caused unspecified damages is enough to state a claim for consequential damages and/or breach of the duty of good faith and fair dealing. *See, e.g.*, *Powell v. Liberty Ins. Corp.*, No. 24 CV 989 (ENV) (CLP), 2025 LX 569454, at *12 (E.D.N.Y. July 14, 2025) (determining that plaintiff's conclusory assertions regarding "consequential damages 'resulting from the delay in payment'" were insufficient where plaintiff failed to detail "how defendant caused the delay, the length of any delay, and any basis for determining that in fact the timing of the payments and appraisal were delayed by any specific standard"). *See also Dahlinger v. First Am. Specialty Ins. Co.*, No. 1:19-CV-0020 (LEK/TWD),

February 5, 2026
Page 4

2020 U.S. Dist. LEXIS 54665, at *10 (N.D.N.Y. Mar. 30, 2020); *Jane Street Holdings, LLC v. Aspen Am. Ins. Co.*, 2013 U.S. Dist. LEXIS 182110 (S.D.N.Y. Dec. 31, 2013); *Rauch v. CMFG Life Insurance Co.*, No. 23-CV-09790 (PMH), 2025 LX 160510, at *10 (S.D.N.Y. Jan. 6, 2025).

Importantly, the Court of Appeals decision in *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187 (2008), does not stand for the proposition that whenever an insurance policy provides coverage for business interruption, then the policy contemplates consequential damages. *See, e.g.*, *Cont'l Info. Sys. Corp. v. Fed. Ins. Co.*, 2003 U.S. Dist. LEXIS 682, at *18 (S.D.N.Y. Jan. 16, 2003) ("Moreover, we are unpersuaded by plaintiffs' contention that the very fact they purchased business interruption insurance indicates that the defendant was specifically aware at the time of contracting that unless the insurer promptly (however that would be defined) paid the on the policy, plaintiffs would be forced to cancel their contract with Investec Ernst and lay off employees."). The Amended Complaint still does not allege that consequential damages were contemplated at the time of contracting.

In my prior letters to Plaintiff, I explained that, assuming that Plaintiff actually did suffer some additional damages above the policy limit, Plaintiff should be able to articulate what those additional damages are, why they were incurred, and what Liberty did to cause them. The reference to "delays" without explaining who delayed, how there was delay, when the delay occurred, and the specific result of the delay is inadequate.

I also pointed out that Plaintiff failed to allege how or why it supposedly had to close the business as a result of Liberty's "delays." This is especially perplexing given (1) the business was operating from a temporary location nearly immediately after the fire; and (2) the rebuild was completed long before the business allegedly closed. Plaintiff has asserted that Liberty paid it $3,250,000 in connection with its claim, but in actuality Liberty paid $3,841,477.75. Thus, Plaintiff

February 5, 2026
Page 5

should be able to provide specific allegations regarding how it was able to reopen the business and operate for more than a year after the loss, and was able to completely repair the structure, and yet payments of nearly $4,000,000 as opposed to some other higher figure caused the business to close.

My December 18, 2025 letter also noted that it was unclear how or why Plaintiff allegedly suffered damages above the Liberty policy limit. Plaintiff's Policy provides coverage for $2,000,000 for the building, $4,000,000 for business personal property, and additional coverage for business interruption.  Liberty paid $1,262,231.25 for the building, $1,661,656.08 for the business personal property, and $523,190 for business interruption. Liberty also paid $391,900.42 in connection with Plaintiff's extra expenses and $2,500 in connection with Plaintiff's claim preparation. Thus, Liberty did not pay the policy limit on any one portion of the policy, so it is unclear how or why IYH suffered damages above the policy limit.

Again, assuming everything that Plaintiff says is true – that Liberty did not timely adjust, investigate, administer, investigate or make payments for the claim, Plaintiff has not alleged any claim for consequential damages and has only plead a breach of contract. *See Brown v. Erie Ins. Co.*, 207 A.D.3d 1144, 1146 (4th Dept. 2022) ("Here, however, the allegations in plaintiff's complaint that defendant violated its duty of good faith and fair dealing are predicated solely upon the claim that defendant failed or refused to pay her the full amount of SUM coverage under the insurance policy, i.e., that defendant had breached the terms of the policy. Consequently, plaintiff failed to state a cause of action for breach of the implied duty of good faith and fair dealing, and the court should have granted defendant's motion insofar as it sought to dismiss that cause of action as duplicative of the breach of contract cause of action."); *Bryant v. Gen. Cas. Co.*, No. 1:18-CV-562, 2019 U.S. Dist. LEXIS 14369 (N.D.N.Y. Jan. 30, 2019); *Scheuer v. United States Liab. Ins. Co.*, No. 7:22-cv-09474 (NSR), 2023 U.S. Dist. LEXIS 111103 (S.D.N.Y. June 27, 2023).

February 5, 2026
Page 6

Thus, Liberty should be allowed to make a motion pursuant to FRCP 12(b)(6) seeking dismissal of the claim for breach of the covenant of good faith and fair dealing and/or any claim for consequential damages. Thank you for your consideration.

Respectfully Submitted,

*s/ Ashlyn M. Capote*

Ashlyn M. Capote